# MEMORANDA

---

CHARLES S. CLARK, Respondent, *v.* THE EXCHANGE PRINTING COMPANY et al., Appellants.

*Clark* v. *Exchange Printing Co.* (74 Hun, 71), reversed.
(Argued December 5, 1895; decided December 19, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered December 6, 1893, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

The following is the opinion in full:

" Whatever evidence there may have been tending to show a conspiracy between the defendant Fitch, the principal owner and manager of the Exchange Printing Company, and the defendant Davis, the manager of the American Magazine Publishing Company, to secure under the form of a sale from the plaintiff to the Magazine Publishing Company, the paper of the plaintiff for the purpose of subjecting it to an execution on a debt owing by the publishing company to the printing company, we find in the record no evidence whatever that such a conspiracy existed as to the paper delivered in November, 1888. The plaintiff. delivered in all 799 reams of which 325 reams were delivered in November for the December number of the magazine, and 474 reams in December and January following. All the paper was delivered under a contract made between the Magazine Publishing Company and the plaintiff in October, 1888. The Exchange Printing Company published the magazine for the Magazine Publishing Company, and had printed it for that company from its organization early in the year 1888, the magazine company furnishing the paper, and before its organization it had

91

printed it for the prior owners. There is no evidence that the printing company took any·part in making that contract, or had any knowledge that the magazine company was to procure paper from the plaintiff until after the contract was made. The court on the trial charged that Fitch had nothing to do with the contract at its inception. The magazine was a monthly publication and it was the practice of the printing company to give orders by telephone to the plaintiff for paper from time to time for the magazine, and the November deliveries were made upon the orders of the printing company. The explanation is found in the fact that the magazine company had directed the plaintiff to honor orders for paper made by the printing company. The paper ordered and delivered in November did not exceed the usual amount required each month for the magazine, and the printing for the issue of a ·particular month was usually done in the latter part of the preceding month or early in the month for which the issue was made. Prior to the contract made by the magazine company with the plaintiff it had procured paper from other sources. How much of the paper delivered by the plaintiff in November was in fact used in printing the December number of the magazine was the subject of controversy on the trial. It was claimed on the part of the plaintiff that only a portion was so used.

" The counsel for the defendants requested the trial judge to charge that if the jury should find for the plaintiff they could only find in his favor for the value of the paper delivered after December 20, 1888, and to the refusal of the court so to charge an exception was taken. We think the exception was well taken. There were two series of deliveries, one in November and the other after December 20th. There is nothing in the evidence which would justify the jury in finding that the printing company and Fitch, when the November paper was delivered, did not receive it in good faith under the expectation that the publication of the magazine was to go on as usual. In fact, the December number was issued, and the printing company set up the matter for the January number, which, however, was not printed. The printing company may

have known or suspected in November that the magazine company was laboring under pecuniary embarrassments. The printing company had an unpaid debt for printing owing by the magazine company. But the evidence falls far short of showing, or tending to show, that the orders given in November were a device to get possession of the plaintiff's paper for the purpose of applying it on the debt. The jury, as the amount of the verdict indicates, found that some of the November paper was sold on the execution on the judgment obtained by the printing company against the magazine company and included it in the verdict. The plaintiff has received nothing for the paper sold by him, and in a general sense it seems inequitable that the printing company should apply on their debt against the magazine company the paper delivered by the plaintiff, for which he has received nothing. This is not an action for deceit based on false representations, or an attempt to follow the proceeds of goods, the sale of which was procured by fraud, and the court so held on the trial. If the printing company and Fitch were not parties to any conspiracy in respect to the November deliveries, they cannot be held in this action for the value of the paper delivered in that month, and it was legally subject to levy on the execution against the magazine company.

"For the error in refusing to charge that no recovery could be had in this action for the paper delivered prior to December 20, 1888, the judgment should be reversed and a new trial granted."

*Cephas Brainerd* for appellants.

*Frederic A. Ward* for respondent.

ANDREWS, Ch. J., reads for reversal.
All concur.
Judgment reversed.